UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joseph Martin,

    Plaintiff,

v.   Civil Action No. 5:10-cv-243

Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 7, 15)

Plaintiff Joseph Martin brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are Martin's motion to reverse the Commissioner's decision (Doc. 7), and the Commissioner's motion to affirm (Doc. 15).

For the reasons stated below, I recommend that the Court grant Martin's motion (Doc. 7), and deny the Commissioner's motion (Doc. 15).

## Background

Martin was born on October 24, 1965, and thus was forty-one years old on the alleged disability onset date of September 1, 2007. (Administrative Record ("AR") 140, 144.) He completed school through the tenth grade and thereafter obtained his GED. (AR 27, 151.) He has work experience as a contractor and construction worker, a factory worker ("hand packager"), and a roofer. (AR 15, 27-28, 40, 145.) The record reveals

that Martin has had a chronic problem with alcohol dependence for over a decade (AR 34, 203-04, 324, 339, 351, 359, 412, 413), but at the April 2010 administrative hearing, he testified that he had been "completely abstinent" since July 2009 (AR 30).

In July 2008, Martin filed applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"), alleging disability as of September 1, 2007. (AR 123-33.) The applications were denied initially and on reconsideration. (AR 47-57.) Pursuant to his DIB application, Martin alleges that, starting on September 1, 2007, he became unable to work as a result of his anxiety disorder, depression, possible post-traumatic stress disorder ("PTSD"), and lower back problems. (AR 144.) He claims that these impairments limit his ability to work because he cannot stay focused for long periods of time, has difficulty remembering instructions, suffers fatigue which causes him to sleep all the time, suffers back strain upon lifting or carrying, and does not want to go anywhere or be around people at times. (*Id.*) At the administrative hearing, Martin testified that he has "a number of emotional problems," and is "tired out most of the time." (AR 29.) He further testified that he is "wound up all the time"; his mind "jumps [from] one thing to another"; and he "tend[s] to panic a lot about things." (AR 32.)

On April 1, 2010, Administrative Law Judge ("ALJ") Thomas Merrill conducted a hearing on Martin's application. (AR 23-46.) Martin appeared and testified, and was represented by counsel. (*Id.*) Additionally, vocational expert ("VE") Maurice Demurrs was present and testified at the hearing. (AR 40-45.) On May 20, 2010, the ALJ issued a decision finding that Martin was not disabled under the Social Security Act from his alleged onset date of September 1, 2007 through the date of the decision. (AR 7-17.)

The Decision Review Board affirmed the ALJ's decision, rendering that decision final. (AR 1-3.) Having exhausted his administrative remedies, Martin filed the Complaint in this action on October 14, 2010. (*See* Doc. 3.)

**ALJ Determination**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national

3

economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

The Contract with America Advancement Act of 1996 ("CAAA"), Pub. L. No. 104-121, 110 Stat. 848, 852 (enacted March 29, 1996) added an extra step to the five-step sequential evaluation for claimants with drug and alcohol addiction, such as Martin here. *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006). Specifically, the Act amended the Social Security Act to provide that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see Porter v. Chater*, 982 F. Supp. 918, 921-22 (W.D.N.Y. 1997). Accordingly, the regulations now include the following provision: "If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). The "key factor" in this determination is "whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1); *see Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005). Given that the claimant is the party best suited to demonstrate whether he or she would still be disabled in the absence of drug or alcohol addiction, "[w]hen the record reflects drug or alcohol abuse, the claimant bears the burden of proving that substance abuse is not a contributing factor

material to the disability determination." *Eltayyeb v. Barnhart*, No. 02 Civ. 925 (MBM), 2003 WL 22888801, at *4 (S.D.N.Y. Dec. 8, 2003) (citations omitted).

Employing this sequential analysis, ALJ Merrill first determined that Martin had not engaged in substantial gainful activity since his alleged onset date of September 1, 2007. (AR 10.) At step two, the ALJ found that Martin had the severe combination of impairments consisting of alcoholic cardiomyopathy[1] with atrial fibrillation[2], alcohol dependence, mild degenerative disc disease at L3-4 and L4-5, and anxiety. (AR 10-11.) Conversely, the ALJ found that Martin's alleged PTSD, depression, and panic attacks were not severe. (AR 10.) In the context of his step-two determination (instead of at the conclusion of the five-step sequential evaluation, as required by the CAAA and 20 C.F.R. § 404.1535, discussed above), the ALJ noted that Martin's alcohol dependence is "material." (*Id.*) But despite this finding, the ALJ stated that he "need not discuss the materiality of [Martin's drug or alcohol addiction]" because agency consultants had included an alcohol addiction in their opinions and still opined that Martin was not disabled. (AR 11.)

---

[1] "Alcoholic cardiomyopathy" is described as follows: "When patients drink heavily for periods of ten years or more, they run a risk of developing alcoholic cardiomyopathy. . . . The heart muscle is damaged, and there is fibrosis and myocardial fiber hypertrophy (increase in the size of the tissues). This reduces the heart's contractility (pumping ability) and may lead to heart failure. The individual feels short of breath, feels a loss of appetite and becomes easily fatigued. He or she may also be subject to palpitations, dependent edema (swelling throughout the lower portion of the body) and possible chest pain. Treatment involves total abstinence, and sometimes anticoagulation agents are used as well." ANN CAMPBELL & MARY KROUL, ATTORNEYS' TEXTBOOK OF MEDICINE 59A.34[1] (Matthew Bender & Co., Inc., 3d ed. 2011) (footnote omitted).

[2] In "atrial fibrillation," the heart beats in an uncoordinated, rapid, and irregular manner. "Sleep deprivation, excessive consumption of caffeine or alcohol and drugs . . . can increase a person's susceptibility to acquire atrial . . . fibrillation." ANN CAMPBELL & MARY KROUL, ATTORNEYS' TEXTBOOK OF MEDICINE 30.61[2] (Matthew Bender & Co., Inc., 3d ed. 2011).

Next, the ALJ determined that Martin did not have an impairment or combination of impairments that met or medically equaled any impairment contained in the Listing of Impairments in 20 C.F.R. part 404, subpart P, appendix 1 ("the Listings"). (AR 11-12.) The ALJ then determined Martin's RFC, finding that he was able to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that he could lift and carry no more than twenty pounds occasionally and ten pounds frequently, stand and walk for only six hours in an eight-hour day, and sit for only six hours in an eight-hour day. (AR 12.) The ALJ further determined that Martin had unlimited use of his upper and lower extremities to push, pull, or operate controls; retained the memory and comprehension for three-to-four-step instructions; retained concentration, persistence, and pace for one-to-three-step tasks for two hours in an eight-hour workday; could handle brief routine interaction with coworkers and supervisors; and could deal with routine changes, safety, and transportation. (*Id.*)

At step four, relying on the VE's testimony, the ALJ found that Martin was unable to perform his past relevant work as a construction worker and hand packager. (AR 15.) At step five, again relying on the VE's testimony, the ALJ determined that there are jobs existing in significant numbers in the national economy that Martin can perform, including small products assembler, car wash attendant, and classifier (laundry sorter). (AR 16.) The ALJ concluded that Martin had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of his decision. (*Id.*)

6

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore v. Astrue*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

### I. ALJ's Consideration of Medical Opinions

Martin argues that the ALJ failed to properly analyze the opinions of treating physicians Drs. Timothy Burdick and Mark Heitzman, and erroneously gave great weight to the opinions of agency consultants, including Dr. Geoffrey Knisely. Under the "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." 20 C.F.R. § 404.1527(d)(2); *see also Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993). When a treating physician's opinion is not afforded controlling weight, the ALJ is required to provide "good reasons" for discounting it. 20 C.F.R. § 416.927(d)(2); *see also Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). This requirement

"greatly assists [courts'] review of the Commissioner's decision[s] and 'let[s] claimants understand the disposition of their cases.'" *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

As explained below, the ALJ failed to properly apply the treating physician rule, and I recommend that the matter be remanded on the following grounds: (a) the ALJ failed to give "good reasons" for the weight he assigned to the relevant medical opinions, 20 C.F.R. § 416.927(d)(2); and (b) application of the correct legal principles does not compel but one conclusion, considering that there is substantial evidence in the record demonstrating that Martin was in fact unable to work during the relevant period as a result of either his alcoholism alone or his combination of impairments, including alcoholism (*see, e.g.,* AR 203-04, 217-18, 224-25, 246-47, 323-24, 339, 351-55, 356-57, 359-63, 413, 414), *cf. Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

### A.     Dr. Timothy Burdick

Martin began treating with Dr. Burdick in April 2009.  (AR 423.)  The Doctor noted a history of atrial fibrillation, cardiomyopathy, alcohol abuse, and PTSD/anxiety; and recorded that Martin's heart was "irregularly irregular with 2/6 murmur." (*Id.*)  In June 2009, Dr. Burdick provided responses to an RFC Questionnaire, opining that Martin's prognosis was "[v]ery poor," given his "chronic mood disorder coupled with ongoing alcohol abuse." (AR 351.)  Dr. Burdick stated that Martin's continued alcohol use would lead to "progressive emotional and cardiac decline." (*Id.*)  In August 2009,

Dr. Burdick further opined that it was "unlikely that Mr. Martin could work full time or [on] a regular basis even if he were not drinking alcohol[, given that h]e has substantial cardiac and psychiatric illness which would likely still be disabling." (AR 365.)

The ALJ gave little weight to Dr. Burdick's opinions, explaining as follows:

> As a result of the above, I can give little weight to the opinions of Dr. Burdick. Of note, filed after hearing, is a March 26, 2010 note that reflects there is no history on file for the claimant. Opinions based upon patient self report are most dependent upon the credibility of that report. Here, the opinions of Dr[.] Burdick are significantly eroded by the above credibility issues of [Martin].

(AR 14.) The second sentence makes little sense in the context of Dr. Burdick's medical opinions, and it is unclear to what "file" the ALJ was referring. The third sentence is vague, and the ALJ makes no attempt to contextualize it. The last sentence (and plausibly the third sentence as well) apparently refers to the ALJ's prior finding that, although Dr. Burdick's treatment notes indicate that Martin had reported on more than one occasion that he was decreasing his alcohol intake, other records reveal that Martin's alcohol intake was consistently high. (*See* AR 14 (citing AR 336, 339, 414).) This is not a "good reason" for giving little weight to Dr. Burdick's opinion, however, considering that it is clear from the record that Dr. Burdick was well aware that Martin was abusing alcohol during their treatment relationship. Specifically, in an April 8, 2009 progress note, Dr. Burdick stated in the "assessment/plan" section: "[a]lcohol abuse[, c]ontinues to drink, understands that he needs to stop completely, and he is working on this, although he has no active plan." (AR 411.) Likewise, in a June 1, 2009 progress note, Dr. Burdick stated in the "past medical history" section: "[a]lcoholic cardiomyopathy, ongoing

alcoholism," and in the "assessment/plan" section: "alcoholism, continuous." (AR 412.)

The ALJ also supported his decision to afford little weight to Dr. Burdick's opinion "regarding [Martin's] functional capacity" by stating that it is not supported by the Doctor's own treatment notes. (*See* AR 14 ("There is nothing within [Dr. Burdick's two treatment] notes that support his proposed functional limitations.").) After reviewing the relevant portions of the record, however, I disagree, and find that Dr. Burdick's opinion that Martin's alcoholism and other impairments prevented him from being able to work (*see* AR 351-55, 365) is in fact supported by the Doctor's treatment notes (*see* AR 423, 424). For example, Dr. Burdick's April 2009 treatment note states that Martin "was initially admitted to CVMC with shortness of breath and chest pressure[, and] was found to have atrial fibrillation, cardiomyopathy and a positive nuclear stress test"; that Martin stated "he still has significant shortness of breath"; and that Martin "realizes that he needs to quit [alcohol] completely." (AR 423.) The note further states that Dr. Burdick began the referral process to Washington County Mental Health Services. (*Id.*) Dr. Burdick's June 2009 treatment note states that Martin feels "run down" and "crappy," and "gets short of breath with minimal exertion." (AR 424.) The note indicates that Martin was having difficulty obtaining services from Washington County Mental Health Services, and that Dr. Burdick was going to "follow up" with the provider to "see if we cannot expedite getting [Martin] in for some care." (*Id.*)

The ALJ's failure to give at least one good reason for rejecting the opinions of treating physician Dr. Burdick is cause for remand. *See Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for

11

the weight given to a treating physician[']s opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). It cannot be said that this failure was harmless because the record reflects that Dr. Burdick's opinions, at least with respect to Martin's alcoholism, are well-supported and not contradicted by substantial evidence. *Cf. Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008) (holding that substance of treating physician rule was not traversed, where treating physician's opinion was "not well-supported by clinical findings and was contradicted by substantial evidence in the record"). For example, in an April 2009 medical record, consulting physician Dr. Terry Rabinowitz noted, in accord with Dr. Burdick's opinion regarding Martin's alcoholism, that Martin suffered from "[a]lcohol dependence," which "is a chronic problem." (AR 324.) Dr. Rabinowitz further noted that he "seriously doubt[ed] whether [Martin] will be very successful with any . . . treatment other than long-term residential treatment for this chronic problem." (*Id.*) The Doctor even went so far as to "suggest" that Martin may not be able to safely care for his daughter, given that "[i]t would be hard for [him] to imagine/believe that [Martin] is completely abstinent during an entire weekend given that he would likely have withdrawal symptoms given his extensive use [of alcohol]." (*Id.*) Despite the clarity of this opinion with respect to Martin's alcohol problem, as well as the assenting opinions of Dr. Burdick and Dr. Heitzman (discussed below), the ALJ found that Martin "is not disabled *even when drinking*." (AR 11 (emphasis added).)

The Commissioner argues that the short duration of Martin and Dr. Burdick's treatment relationship provides support for the ALJ's decision to afford little weight to Dr. Burdick's opinions. However, the ALJ did not reference the duration of this treatment relationship in his decision; and the court cannot affirm the ALJ's decision based on the Commissioner's *post hoc* reasoning which the ALJ did not espouse. *See Snell v. Apfel*, 177 F.3d at 134 (holding that a reviewing court "may not accept appellate counsel's *post hoc* rationalizations for agency action") (quotation omitted). Moreover, although it is true that Dr. Burdick appears to have treated Martin for only a short period, the state agency consultants – whose opinions the ALJ gave significant weight (*see* AR 11, 14) – did not treat or examine Martin at all.

### B.  Dr. Mark Heitzman

The ALJ also failed to give good reasons for affording an unspecified amount of weight to the opinion of Dr. Heitzman, Martin's treating cardiologist. Dr. Heitzman began treating Martin in March 2009. (AR 359.) In July 2009, he opined that Martin could not perform even a low stress job because of his alcoholism. (AR 360-61.) In August 2009, he further opined: "Many patients with heart disease caused by excessive alcohol intake show <u>significant</u> improvement if they are able to abstain completely. If such improvement did occur, I think it likely that Mr. Martin would be able to resume a normal lifestyle, including being able to work at a regular job full time." (AR 364 (emphasis in original).)

As part of his step-two determination, the ALJ apparently adopted Dr. Heitzman's opinion regarding the materiality of Martin's alcohol abuse, stating: "[T]here is no clearer

13

statement of materiality of alcohol abuse than the statement of Dr. Heitzman that [Martin's] medical condition would improve significantly if [he] quit abusing alcohol." (AR 10-11.) Likewise, as part of his RFC determination, the ALJ stated that he gave "weight" to Dr. Heitzman's opinion that Martin's "prognosis is dependent upon his alcohol intake." (AR 14.) Despite this finding, the ALJ "defer[red]" to the agency doctors' opinions that Martin "is not disabled even when drinking" (AR 11), a finding with which Dr. Heitzman clearly would not agree. Specifically, Dr. Heitzman opined that Martin was "[i]ncapable of [performing] even a low stress job" due to alcoholism (AR 360), and that Martin "has a long road ahead of him, I'm not sure he is capable of making the journey" (AR 339). Dr. Heitzman also stated in his treatment notes of April, May, and June 2009, respectively, that Martin "reeked of alcohol," "may end up at the homeless shelter," is "exhaust[ed]" by "[a]ny activity," is "OK" only "[i]f he doesn't do anything," "feel[s] terrible, weak, tired, with very limited exercise tolerance," "is essentially living on the street . . . crash[ing] at his relatives['] houses when they let him," "looked unhappy, fatigued," "cried intermittently during our exam," and "continues to do poorly with his cardiomyopathy." (AR 339, 413, 414.) In a June 16, 2009 office note, Dr. Heitzman stated that he was "really surprise[d]" that Martin was denied disability, and opined that Martin was "certainly . . . functionally disabled at this point." (AR 414.) The ALJ did not adequately address these relevant statements from a treating source; and further, determined in direct conflict with these statements that Martin was "not disabled *even when drinking*." (AR 11 (emphasis added).)

14

### C.     Agency Consultant Dr. Geoffrey Knisely

More significantly, the ALJ erred in affording "great weight" to the "opinions of the state agency medical consultants" (AR 14) without providing sufficient explanation or analysis.  The ALJ supported his decision to adopt the non-treating, non-examining agency consultants' opinions by stating as part of his step-two determination that these doctors are "familiar with the terminology and definitions used by the Social Security Administration" and "appear to have included [drug or alcohol abuse] in their opinions; opining that [Martin] is not disabled even when drinking.  I will defer to their opinions and continue the analysis." (AR 11.)  First, there is no regulation or other law requiring (or even allowing) ALJs to "defer" to the opinions of non-examining agency consultants, as the treating physician rule requires with respect to the opinions of treating physician opinions.  In fact, the relevant regulation provides that, although ALJs must consider the opinions of agency consultants, they "are *not* bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404.1527(f)(2)(i) (emphasis added).  Second, an ALJ may not afford significant weight to the opinions of agency consultants merely because these consultants use and are familiar with the proper "terminology and definitions." (AR 11.)  If that were the case, virtually every agency consultant opinion would be entitled to significant weight.

Later, as part of his RFC determination, the ALJ noted the bases for the agency consultants' opinions, and then stated, "[g]iven this erosion of the credibility of [Martin's] allegations provided by his alcohol abusing behavior[,] the assessment of the state agency medical consultants . . . are reasonable and deserving of significant weight."

(AR 15.) Thus, the ALJ attempted to justify the weight he afforded to the opinions of agency consultants by referring to his determination that Martin is not credible because he abused alcohol. This method of reasoning does not pass muster. The ALJ should have at least mentioned that the agency consultants had never examined or treated Martin, whereas Drs. Burdick and Heitzman had. *See Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990) ("The general rule is that . . . reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability."); *Green-Younger v. Barnhart*, 335 F.3d 99, 107-08 (2d Cir. 2003) (recognizing expert opinion evidence as not sufficiently substantial to undermine the position of the treating physician where the expert was a consulting physician who did not examine the claimant). Moreover, the ALJ should have considered the agency consultants' medical specialty and expertise, and stated whether and what other medical evidence supported their opinions as required by 20 C.F.R. § 404.1527(f)(2)(ii), which provides as follows:

> When an [ALJ] considers findings of a State agency medical or psychological consultant . . ., the [ALJ] will evaluate the findings using the relevant factors in paragraphs (a) through (e) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. *Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical . . .*, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

(Emphasis added.)

Despite the Commissioner's argument to the contrary, the ALJ's failure to properly consider the opinion of state agency consultant Dr. Knisely is not harmless, given that (a) there is substantial evidence in the record, including the opinions of treating physicians Drs. Burdick and Heitzman, described above, which conflicts with this opinion; (b) Dr. Knisely's opinion appears to have been made without the Doctor having reviewed these conflicting treating physicians' opinions (*see* AR 349, where Dr. Knisely checked off a box stating that there was no medical source statement regarding Martin's physical capacities in the file); and (c) Dr. Knisely's opinion merely describes some of the medical evidence and makes a conclusion based thereon without providing a reasoned explanation or analysis.

In sum, it is unclear what legal standard the ALJ applied in weighing the above-described medical opinions. Moreover, the ALJ failed to provide "good reasons" for affording minimal weight to the opinions of Martin's treating physicians and great weight to the opinions of non-examining agency consultants. Accordingly, and because application of the correct standard does not lead inexorably to a single conclusion, I recommend remanding the case so that the ALJ may conduct a proper analysis of the medical opinions and reweigh the evidence.

## II. ALJ's Credibility Determination

On remand, the ALJ should make new credibility findings. In his decision, the ALJ questioned Martin's credibility on the following grounds: "[Martin's] continual abuse of alcohol as a precipitating cause of his symptoms undermines the credibility of his allegations that he is disabled by those symptoms." (AR 13.) In essence, the only

17

reason the ALJ provides for questioning Martin's credibility is that Martin was an alcoholic. But the recognition of this fact could reasonably lead to the conclusion that Martin was unable to work, perhaps exclusively as a result of his alcoholism or perhaps as a result of the combination of his alcoholism and other impairments. Yet again, the ALJ inexplicably found that Martin was able to work, even taking into account his alcoholism. On remand, although the ALJ is not obligated to accept Martin's subjective reporting of pain and functional limitations, the ALJ is required to explain his reasons for affording the weight given to such reporting, and these reasons must be supported by the record. *See Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984); SSR 96-7p, 1996 WL 374186, at *4 (Jul. 2, 1996).

### III.     Materiality of Alcohol Use

Finally, on remand, the ALJ should be ordered to *first* decide whether Martin was disabled (as a result of all his impairments, including his alcoholism) during any portion of the relevant period, *and then*, if there is a finding of disability, decide "whether [Martin's] . . . alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). As noted above, in the context of his step-two determination, the ALJ stated that Martin's alcohol dependence was "material," explaining: "There is no clearer statement of materiality of alcohol abuse than the statement of Dr. Heitzman that [Martin's] medical condition would improve significantly if [he] quit abusing alcohol." (AR 10.) Despite this finding, however, the ALJ proceeded to state that he "need not discuss the materiality of [Martin's alcohol addiction], . . . given that the agency doctors . . . appear to have included [alcohol addiction] within their

opinions; opining that [Martin] is not disabled even when drinking." (AR 11.) There is no authority supporting this method of analyzing a disability claim involving alcoholism. Moreover, as explained herein, substantial evidence does not support the ALJ's adoption of the agency consultants' opinion that Martin "is not disabled even when drinking." (*Id.*) Rather, the evidence unambiguously demonstrates that, when he was abusing alcohol, Martin was unable to function, let alone work. (*See, e.g.,* AR 203-04, 217-18, 224-25, 246-47, 323-24, 339, 351-55, 356-57, 359-63, 413, 414.) It is not for the court to determine whether Martin would still be disabled if he stopped using alcohol, as required by 20 C.F.R. § 404.1535(b)(1), or which of Martin's physical and mental limitations would remain if he stopped using alcohol and whether any or all of these limitations would be disabling, as required by 20 C.F.R. §404.1535(b)(2). These determinations should be made by the ALJ on remand, in accordance with the applicable regulations.

## Conclusion

For these reasons, I recommend that Martin's motion (Doc. 7) be GRANTED, and the Commissioner's motion (Doc. 15) be DENIED.

Dated at Burlington, in the District of Vermont, this 29th day of July, 2011.

*/s/John M. Conroy*
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and

19

Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).  Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).